IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JAMES E. EVANS )
and MARGARET DURHAM, )
)
      Plaintiffs, ) TC-MD 110892C
)
     v. )
)
JOSEPHINE COUNTY ASSESSOR, )
)
      Defendant. ) **DECISION**

Plaintiffs have appealed Defendant's removal of 21.54 acres of land identified as Account

R322282 (subject property) from Western Oregon Forestland Special Assessment. The tax year

at issue is 2011-12. Trial in the matter was held by telephone on April 4, 2012. Plaintiffs were

represented by Matthew A. Rowan, Attorney at Law. Defendant was represented by Constance

Roach (Roach), Josephine County assessor, and Daniel Wilson, Chief Appraiser. Both Margaret

Durham (Durham) and James E. Evans (Evans) testified on their behalf. Roach testified for

Defendant.

I.      STATEMENT OF FACTS

Defendant declassified 21.54 acres of land owned by Plaintiffs from Western Oregon

Forestland Special Assessment on June 27, 2011. (Ptfs' Compl at 2.) Durham testified that the

Plaintiffs purchased the property in May 2011, with Durham moving onto the property in June

2011, and Evans moving onto the property September 20, 2011.

On or about June 13, 2011, which was shortly after Durham moved onto the property,

Defendant sent Plaintiffs a questionnaire regarding the use of the property, past, present, and

future. (Ptfs' Ex 2.) Question number 2 asked if Plaintiffs "intend[ed] to hold the forestland for

the primary purpose of growing and harvesting marketable timber." (*Id*.) Below that question

are two boxes, the first with the word "Yes" next to it and the second with the word "No," followed by the words "the intent is _____." (*Id.*) Durham, the one who filled out the questionnaire, testified that before filling out the questionnaire she discussed it with a co-worker who was experienced with Oregon forestland special assessments. Durham testified that after consulting with her co-worker, and on her co-workers advice, she checked the "No" box and in the blank space provided in Defendant's questionnaire, Durham wrote "preservation of forest." (*Id.*) Roach testified that she removed the 21.54 acres of property from Western Oregon Forestland Special Assessment based on that response, because the special assessment statute requires that the taxpayer be growing and harvesting trees rather than simply preserving the forest. Plaintiffs were informed of that decision by Defendant's June 27, 2011, notice. (Ptfs' Ex 3.) Durham testified that the questionnaire was confusing and that an employee with the Josephine County Assessor's office told her other people have complained about the form being confusing too.

Durham testified that prior to moving to Oregon, she owned 20 acres of forestland in Washington from which she harvested trees. Prior to that, Durham owned and harvested trees from a 20 acre parcel of land in Idaho, a 25 acre parcel in North Carolina, and before that an 80 acre parcel in Colorado. Evans testified that he had considerable experience and knowledge with the growing and harvesting of trees, having grown up on a tree farm, and continued those activities as an adult.

Both Durham and Evans testified that they intended to remove trees from the subject property. Evans testified that he began talking to loggers in October 2011 and received bids from two different loggers for the harvest of trees. Plaintiffs subsequently obtained a permit for the removal of trees on November 28, 2011. (Ptfs' Ex 4.) Both the discussions with loggers and

the acquisition of the tree removal permit occurred after Plaintiffs received Defendant's notice that the property had been removed from special assessment. (*See* Ptfs' Exs 3; 4 at 1.)

Plaintiffs introduced two recent tax court cases during closing, *Entenman v. Multnomah County Assessor* (*Entenman*), TC-MD 101093C, WL 2436660 (June 16, 2011), and *Sousa v. Josephine County Assessor* (*Sousa*), TC-MD 091279C, WL 4563373 (Dec. 4, 2009), and argued that the facts of the current case are distinguishable from these two recent cases which upheld the determination of the county assessors.

## II.     ANALYSIS

ORS 321.257(2)[1]  provides for special assessment of western Oregon forestland, which is defined in part as land "that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland."[2]  Under that program, the value of the land is specially assessed for ad valorem tax purposes, with a taxable value well below market value, and an exemption provided for the value of the growing timber, on which a tax is imposed at the time of harvest. *See* ORS 321.262 (providing for special assessment of forestland in western Oregon); ORS 321.272 (exempting timber from ad valorem property taxation).

The parties agree that there is no issue with the statutory requirements for minimum stocking of trees. The issue in this case is Plaintiffs' intended use of the land.

Plaintiffs argue that the key to the case is the interpretation of ORS 321.257, which is set forth above. Plaintiffs contend that it was their intent all along to use the subject property to grow and harvest trees of marketable species, as they have in the past with forestland they owned

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2009.

[2] Forestland under ORS 321.257(2) also includes "land in western Oregon, the highest and best use of which is the growing and harvesting of such [marketable species] trees."

in other states. Plaintiffs further argue that Defendant's questionnaire was (and is) confusing, a complaint they say an employee in the assessor's office told Durham that office had heard from other landowners in the past. The confusion to which Plaintiffs refer is the use of the term "marketable." Moreover, Plaintiffs argue that the questionnaire Defendant used is neither required by statute, nor is the language therein consistent with the statutory requirements for forestland special assessment. As to the latter point, consistency between the form of the statute, Plaintiffs note that the statute refers to the "predominant" purpose, whereas the questionnaire uses the word "primary" purpose. (Ptfs' Ex 2.)

Defendant responds that, based on the information Durham provided on the questionnaire, she does not believe Plaintiffs initial intent was to hold or use the land for the predominant or primary purpose of growing and harvesting marketable trees, but rather to preserve the forest. Defendant argues that by checking the box in the questionnaire labeled "No," which is associated with the question of whether the property owner intends to hold the land for the primary purpose of growing and harvesting marketable timber, Plaintiffs plainly stated that their intent was to "preserve the forest," and not "to hold the forestland for the primary purpose of growing and harvesting marketable timber," which is the question Defendant asks in its questionnaire (question #2).

Durham testified that she was confused by the word "marketable" appearing in question #2 of Defendant's questionnaire. Durham testified that she spoke with a coworker about the word marketable on the questionnaire because the coworker had 40 years of experience with Oregon forestland special assessment. That coworker allegedly advised Durham that she should check the "No" box. Plaintiffs believe the confusion stems from the fact that the coworker owned and operated a 40 acre commercial forest operation, the implication apparently being that

because Plaintiffs were not intending to operate "commercially," they should answer "no" to question #2. Plaintiffs contend that while they indicated their intent was to "preserve" the forestland, the terms "preserve" and "harvest" are not mutually exclusive or incompatible. According to the testimony, Durham was reasonable in assuming that she could state intent to preserve the forestland while intending to remove trees based on her previous forestland experience, specifically in Washington where the word preservation was used in conjunction with approval of timber land status. Plaintiffs' September 2008 timber management plan for the property in Washington indicates that growing and harvesting timber would (or at least could) occur on the property and the county commissioners' approval agreement provides that "the land shall be used only in accordance with the *preservation* of its classified use." (Ptfs' Ex 10 at 1.) (emphasis added). While the use of the word preservation is not directly tied to preserving trees (it is used in conjunction with preserving the status of the land) its appearance is enough to cause confusion in a lay person, as appears to be the case here.

Counsel for Plaintiffs argued that this case is different from two fairly recent tax court decisions involving forestland special assessment, one upholding the assessor's denial of the taxpayer's application for designated forestland special assessment, *Entenman* and, and another involving the removal of the taxpayer's property from designated forestland special assessment, *Sousa*. The taxpayers in *Sousa*, like Plaintiffs in this case, received a questionnaire from the assessor asking about the use of the property and in response to the question of intent (question #2) check the "No" box indicating that they did not intend to hold the land for the primary purpose of growing and harvesting marketable timber. *Sousa*, TC-MD No 091279C at *1. However, unlike Plaintiffs in this case, the Sousas testified at trial that they did not intend to grow and harvest marketable trees. *Id*. The same was true in *Entenman*. *Entenman*, TC-MD No

101093C at *1. The taxpayer in *Entenman* had owned the property for approximately 17 years and within that time had not planted or harvested any trees, save one that fell on her garage in 2003 and had to be removed. *Id*. Entenman testified that they had no plans to cut trees in the future except those requiring removal for safety purposes. *Id*. By contrast, Plaintiffs in this case testified that they did in fact intend to cut trees; they interviewed several loggers about harvesting trees, obtained bids from two for the removal of trees, and then they obtained the necessary permit to cut trees.

Defendant did not put present any testimony at trial, but was cross-examined by Plaintiffs' representative. Roach testified on cross that if Plaintiffs had checked to the "Yes" box associated with question #2 rather than the "No" box, her office would never have removed the 21.54 acres from designated forestland special assessment. Thus, the decision to remove the land from special assessment was based solely on what appears to be an erroneous response to one question on a questionnaire.

Based on Plaintiffs' testimony and long history of owning productive timber land, as well as their actions taken to harvest trees from the subject property, the court finds that Plaintiffs did intend to hold or use the property for the predominant purpose of growing and harvesting tress of a marketable species. While this intent is not immediately clear from the answers given to the questions on Defendant's questionnaire, those answers are also not inconsistent with the intent to preserve the forest for the future and continuing harvesting of trees, activities which the Plaintiffs have long been involved in and have carried out in multiple states. Plaintiffs' subsequent actions are also consistent with their tree cutting history. Moreover, other than the one damaging answer in the questionnaire, there is no evidence to show that Plaintiffs did not intend to grow and harvest trees of a marketable species. Durham testified credibly that she was influenced in

completing the questionnaire by the conversation she had with a coworker who had extensive experience in commercial forest practices. Finally, Durham filled out Defendant's questionnaire less than a month after she had purchased the property, and moved to Oregon from Washington.

### III. CONCLUSION

Given Plaintiffs pattern of tree cutting and unique circumstances, the court concludes that Plaintiffs had the intent to hold or use the subject property for the predominant purpose of growing and harvesting trees of a marketable species. Plaintiffs' use of the term "preservation of forest" was used in connection with their intent to preserve the forest for current and future timber cutting operations. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted and that the subject property identified as Account R322282 qualified for western Oregon Special Assessment as designated forestland for the 2011-12 tax year.

Dated this ___ day of July 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on July 25, 2012. The Court filed and entered this Decision on July 25, 2012.*